IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES E. BEAN, individually, doing business )
as Bean's Towing and Auto Body and as )
Next Friend for J.R.B., a minor, )
)
              Plaintiffs, )
)
    v. )    Case No. 008-2422-JWL
)
STEVEN NORMAN, Sheriff of Cherokee )
County, Kansas, in his individual and official )
Capacities, )
)
KENT SOUCY, Undersheriff of Cherokee )
County, Kansas, in his individual )
and official capacities, and )
)
KEITH MARSHALL, Deputy of Cherokee )
County, Kansas, in his individual )
and official capacities, )
)
)
              Defendants. )
)
_____)

## **MEMORANDUM AND ORDER**

Plaintiff James E. Bean, a tow truck operator in Cherokee County, Kansas, brings this action against individuals employed by the Cherokee County Sheriff's Department, alleging a host of anti-trust and constitutional claims based upon the policies of the Sheriff's Department in referring tow calls. In addition, Mr. Bean brings claims on behalf of himself and his minor son that stem from their arrest outside of a strip club in Galena, Kansas on July 20, 2007. In particular, the plaintiffs claim that they were

1

wrongfully arrested after protesting outside of the strip club in retaliation for their exercise of various constitutionally protected rights, that defendants conspired to effectuate these unlawful arrests and that the arrests violated several of their constitutional rights. Plaintiffs also bring a claim for false imprisonment. This matter comes before the Court on defendants' Motion for Judgment on the Pleadings, pursuant to Fed.R.Civ.P. 12(c) (doc. #67) [hereinafter "the Motion"]. For the reasons set forth below, the Court grants plaintiffs leave to amend their complaint by February 12th, 2010.[1] Therefore, the Court denies the Motion, but without prejudice, recognizing that defendants may wish to reassert certain arguments after plaintiffs file their amended complaint.[2]

---

[1] In addition to specific areas where plaintiffs seek amendment of their complaint, plaintiffs desire to amend counts I-VIII of the complaint to include claims for supervisory liability. The Court grants plaintiffs leave to amend the complaint to add such claims, but cautions plaintiffs that the significant number of previous amendments will weigh significantly if the Court must consider any future requests for amendment. The Court denies the Motion to Amend filed by plaintiffs (doc. #87), as it contains an attached "Third Amended Complaint" that is not consistent with the Court's rulings here. However, plaintiffs are hereby permitted to separately file an amended complaint.

[2] Defendants contend that this Court is precluded from permitting plaintiffs to amend the complaint because they failed to comply with Fed.R.Civ.P. 7 or D. Kan. Rules 7.1 or 15.1. However, "[i]t is settled that the grant of leave to amend the pleadings pursuant to [Fed.R.Civ.P. 15(a) is within the discretion of the trial court." *Miller v. Bd. Of Educ. of Albuquerque Public Schools*, 565 F.3d 1232, 1249 (10th Cir. 2009) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971)). The Court certainly understands defendants' objections to allowing plaintiffs to amend their complaint at this late date after they have had the benefit of having the weaknesses in their case exposed. However, plaintiffs have not previously sought to amend their complaint in the face of a challenge to its sufficiency. Moreover, these timing considerations are largely attributable to the manner in which defendants elected to handle the sufficiency of the allegations in the complaint. Rather than challenging the

I.  Background[3]

Plaintiff James E. Bean owns a towing and auto body business in Cherokee County, Kansas.  The Cherokee County Sheriff's Department ("Sheriff's Department") dispatches requests for tow calls received when a driver within the county or on the highway needs tow services.  The Sheriff's Department also dispatches tow requests generated by the police department in Columbus, Kansas.  With most of these tow requests, the driver does not express a preference for a particular tow company.  Such tow calls are known as "nonpreference calls."  Mr. Bean claims that he does not receive nonpreference tow calls to which he is entitled under the Cherokee County Wrecker Rotation Policy ("the Rotation Policy").  According to Mr. Bean, the Sheriff's Department instead favors incumbent businesses and those that maintain political or social affiliations with the Sheriff's Department.

Shortly after Mr. Bean began operating his towing business in Cherokee County, he received a phone call from Pat Collins, a former sheriff presently serving as a County Commissioner.  Mr. Collins stated to Mr. Bean that one of Mr. Collins's friends had been

---

sufficiency of the complaint by way of a Rule 12(b)(6) motion to dismiss much earlier in the proceedings, defendants waited to file this present motion for judgment on the pleadings.  This consideration, combined with the fact that the plaintiffs ought to be afforded an opportunity to test their claim on the merits if the underlying facts and circumstances may be a proper subject of relief, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), leads the Court to conclude that plaintiffs should be given an opportunity to amend their complaint.
[3] Consistent with the well-established standard for evaluating a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), and therefore a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), the Court accepts as true all well pleaded factual allegations in plaintiffs' complaint.

charged too much for towing services. Mr. Collins informed Mr. Bean that he had better drop his prices. Mr. Bean then asked Mr. Collins what amount of money he believed should be charged instead, and Mr. Collins replied that things would not be good for Mr. Bean unless he dropped his prices. Mr. Bean regarded this as a threat by Mr. Collins to influence how the Sheriff's Department distributes nonpreference tow requests.

After receiving this phone call, Mr. Bean had a meeting with the undersheriff of Cherokee County, defendant Kent Soucy. Mr. Soucy heads the division that dispatches tow requests. Mr. Bean notified Mr. Soucy of the conversation he had with Mr. Collins. Mr. Soucy told Mr. Bean "we just had a meeting about you." Mr. Bean interpreted this to mean that Mr. Soucy met with the sheriff of Cherokee County, defendant Steven Norman, "because Collins remained influential within the department since he forfeited his office."[4] Mr. Soucy then told Mr. Bean "not to worry about it."

After this conversation with Mr. Soucy, the Sheriff's Department began to manipulate the existing system of tow dispatches to the prejudice of Mr. Bean. If a customer specifically requested Mr. Bean's services, the Sheriff's Department would penalize Mr. Bean by denying him the next nonpreference call. Mr. Soucy and Mr. Norman also allegedly discriminated against Mr. Bean in the number of nonpreference tow requests they referred to him. Moreover, the City of Columbus informed Mr. Bean that he would no longer be entitled to receive tow referrals because his towing business was not physically located within Columbus. Mr. Bean petitioned the City of Columbus

---

[4] In his memorandum in opposition to the present motion, Mr. Bean also indicated that he understood the meeting to include Mr. Collins. If plaintiffs seek to allege that Mr. Collins was present at the meeting, the complaint should reflect this.

concerning this exclusionary tow policy to no avail. The City of Columbus then notified the Sheriff's Department that Mr. Bean would not be permitted to receive tow referrals and directed the Department to make refer all nonpreference tow requests to the two tow services located within Columbus's physical boundaries.[5] According to Mr. Bean, these actions were taken in retaliation for Mr. Bean petitioning the City of Columbus to change its tow policy.

On July 20, 2007, Mr. Bean and his minor son J.R.B. joined other individuals in protesting outside of Sensations Gentlemen's Club in Galena, Kansas ("the strip club"). Before the protest, defendant and deputy sheriff Keith Marshall ("deputy Marshall") notified Mr. Bean and another protestor that they were free to protest so long as they remained off private property and did not yell at the strip club employees or patrons.[6] However, employees of the strip club filed "baseless" complaints to ensure the removal of Mr. Bean and J.R.B. Apparently club employees had complained about Mr. Bean's language,[7] and deputy Marshall consequently arrested both J.R.B. and his father, while choosing not to arrest other, similarly situated protestors. According to Mr. Bean, Deputy Marshall effectuated this arrest without properly investigating the complaints of

---

[5] The two tow services located within Columbus were Mike's Collision Center and Glasgow Body and Frame.

[6] Mr. Bean had previously preached and prayed in the presence of strip club employees and patrons.

[7] Although the facts in the complaint regarding Mr. Bean and J.R.B.'s arrest are laid out in a rather convoluted manner, it appears that the club employees complained that Mr. Bean had described the strip club as a "whoremonger" and the employees of the strip club as "prostitutes" who would "go to hell." Mr. Bean and J.R.B. apparently notified Deputy Marshall that they did not use such terminology, but Deputy Marshall failed to properly investigate and instead arrested them on the basis of the complaint by the strip club employees.

the employees.[8] Plaintiffs claim that their arrests were unlawful, as deputy Marshall did not have probable cause to arrest them. They also allege that Mr. Norman and Mr. Soucy failed to properly train deputy Marshall in the legal constraints upon the ability of an officer to arrest a protestor. Plaintiffs claim that their arrest and subsequent detention[9] violated several constitutional protections and that the defendants conspired to arrest them in retaliation for Mr. Bean's exercise of certain constitutional rights, including his decision not to associate with the Sheriff's Department or its employees and his decision to petition the City of Columbus[10] regarding its exclusionary tow referral policy.

II. Standards for a Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Rule 12(c) is analyzed using the same standard that applies to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006). The Court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief

---

[8] For example, plaintiffs assert that Deputy Marshall failed to view the videotape that J.R.B. had been making of the evening's protests.

[9] Mr. Bean and J.R.B. were transported to jail, where Mr. Bean was confined for over three days. The government did not prosecute Mr. Bean for his conduct on the evening of July 20th.

[10] It is unclear whether plaintiffs allege that Mr. Bean "petitioned" the Sheriff's Department as well as the City of Columbus.

requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic*, 127 S.Ct. at 1964-65. The court must accept the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and view all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

III. Discussion

A. Deprivation of Due Process Based Upon a Failure to Refer Tow Calls

The first count of plaintiffs' second amended complaint asserts a claim under 42 U.S.C. § 1983 for the alleged deprivation of Mr. Bean's property interest in tow referrals without due process of law, in violation of the Fourteenth Amendment. Defendants contend that this count must be dismissed because Mr. Bean has not established that he has a recognized property interest in receiving tow referral calls from the Sheriff's Department, as he has not pointed to any state law entitling him to tows and did not allege the existence of a "mutual explicit understanding" that he would receive tow referral calls. *See Abercrombie v. City of Catoosa, Okla.,* 896 F.2d 1228, 1231 (10th Cir.

7

1990) (explaining that a property interest may arise from such sources as "'state statutes, local ordinances, established rules, or mutually explicit understandings.'" (quoting *Dickenson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir. 1988)). In response, Mr. Bean attached a "Cherokee County Communications Wrecker Rotation Policy," which he believes shows that there was a mutually explicit understanding that the towing companies placed on the rotation list would receive nonpreference tow calls in a non-discriminatory manner. Mr. Bean also seeks leave to amend his complaint to clarify his position on the existence of a "mutual explicit understanding." In light of the attached policy and arguments regarding the existence of a "mutual explicit understanding," the Court finds it appropriate to grant Mr. Bean's request for leave to amend the complaint.[11] *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (explaining that dismissal with leave to amend is appropriate "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief.") (quotation and citations omitted).

B. Retaliation for the Exercise of First Amendment Rights

In count two, Mr. Bean contends that the defendants failed to give him all tow referrals to which he was entitled in retaliation for his exercise of constitutionally

---

[11] In response to Mr. Bean's arguments, the defendants contend that the wrecker policy should not be considered as it was not contained within the pleadings, and that, regardless, the policy establishes that a mutually explicit understanding did not exist. As the Court grants Mr. Bean leave to amend his complaint, however, the Court believes that it would be more appropriate to address the issue of whether the policy establishes a mutually explicit understanding after amendment.

protected rights, specifically his rights to free speech, to freely associate, and to petition the government for redress. The defendants contend that this claim fails as a matter of law for various reasons,[12] including Mr. Bean's failure to specify the constitutionally protected actions that he took that resulted in the wrongful retaliation.[13] As the Court grants Mr. Bean's request to amend his complaint, the Court reserves any opinion on the sufficiency of Mr. Bean's allegations in count two.

C. Conspiracy

In count three, Mr. Bean claims under Section 1983 that the defendants conspired to arrest him in order to "punish" him for his decision to engage in constitutionally protected activities—namely, choosing not to associate with members of the Sheriff's Department, speaking out against the tow referral policies of the Sheriff's Department, and petitioning the government for redress of his grievance regarding the tow referral system. In response, defendants assert that the Local Government Anti-Trust Act ("LGAA") bars Mr. Bean's claim and that, in any event, Mr. Bean has not adequately alleged the existence of a conspiracy. The Court did not construe count three as alleging

---

[12] Aside from arguing that this count of the complaint lacked sufficient detail, defendants asserted that Mr. Bean failed to demonstrate that the actions he took qualify as constitutionally protected activity.

[13] Mr. Bean actually stated in his second amended complaint that the defendants retaliated against him because (1) he choose not to associate with defendants Norman and Soucy, (2) he engaged in constitutionally protected speech and (3) he petitioned the government for redress of his grievance regarding the tow referral policies of the Sheriff's Department. He did not explicitly state in the complaint that the defendants retaliated against him for his activities at the strip club on the night of July 20th, 2007. Rather, he asserted that the complaint alleged retaliation on this basis because count two incorporated all prior paragraphs by reference.

the existence of a conspiracy to deny Mr. Bean tow referrals and plaintiffs have not clearly specified whether they intended count three to do so. However, plaintiffs asserted in their response to the Motion that the defendants conspired to discriminate against Mr. Bean in terms of the tow referrals he received. As the LGAA's applicability to the allegations contained in count three may hinge upon precisely what plaintiffs allege the defendants conspired to do, the Court reserves any opinion on the legal issues raised by the defendants, as well as whether plaintiffs have adequately alleged the existence of a conspiracy. Defendants may reassert these claims after amendment of the complaint if they so desire.

D. Sherman Act Violations

In count four, plaintiffs allege that defendants conspired with others and engaged in an enterprise to direct business to other tow companies, all in an effort to restrain and monopolize trade in interstate commerce, in violation of Sections 1 and 2 of the Sherman Antitrust Act. Plaintiffs seek a permanent injunction abolishing the current geographical restrictions of the tow referral policy and establishing a neutral tow referral system. In response, the defendants contend that the LGAA prohibits plaintiffs' Sherman Act claim, and that plaintiffs therefore cannot establish a probability of success on the merits of their claim, a prerequisite to injunctive relief. Defendants also allege that the plaintiffs cannot demonstrate irreparable injury or a lack of adequate legal remedies, as plaintiffs might recover damages if the Sheriff's Department in fact denied Mr. Bean tows in retaliation for his exercise of First Amendment rights. Plaintiffs concede that the LGAA would

preclude an award of damages against the defendants acting in their individual capacities, but state that they seek only injunctive relief for the defendants' alleged violation of the Sherman Act and that they have sufficiently stated a claim for injunctive relief.

As the Tenth Circuit has explained, the LGAA was intended as a response to "'an increasing number of antitrust suits, and threatened suits, that could undermine a local government's ability to govern in the public interest.'" *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 885 (10th Cir. 2005) (quoting *Tarabiski v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1564 (10th Cir. 1991)). To this end, the LGAA "precludes the courts from awarding monetary relief on antitrust claims brought against local government entities." *Thatcher Enterprises v. Cache County Corp.*, 902 F.2d 1472, 1477 (10th Cir. 1990). Specifically, the Act provides that "[n]o damages, interest on damages, costs, or attorney's fees may be recovered under section 4, 4A, or 4C of the Clayton Act (15 U.S.C. 15, 15a, or 15c) from any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. § 35(a). The LGAA encompasses claims seeking damages for violations of the Sherman Act. *GF Gaming Corp.*, 405 F.3d at 885. However, the Act does not preclude this Court from awarding injunctive or declaratory relief. *Thatcher Enterprises*, 902 F.2d at 1477. *See also Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 211 F.3d 1279 (10th Cir. 2000). As plaintiffs now clearly limit their requested relief to an injunction, the Court rejects the assertion of defendants that the LGAA bars the claim and, consequently, the interrelated argument that plaintiffs cannot establish a probability of success on the merits.

However, defendants also argue that plaintiffs are not entitled to injunctive relief because they cannot demonstrate either that they will be irreparably injured or that they lack adequate legal remedies. In the complaint, Mr. Bean asserted that he would suffer irreparable injury because nonpreference tow calls are currently given to other towing companies and that this permits such companies to gain an "unfair market advantage" by establishing contacts with customers who might then later request that particular tow company. Moreover, Mr. Bean explained that a calculation of damages from the failure of defendants to refer tow calls would be impossible. Nonetheless, defendants contend that Mr. Bean cannot establish irreparable injury or an inadequate legal remedy because Mr. Bean would have an adequate remedy if he successfully demonstrates that he was denied tow referrals in retaliation for the exercise of his First Amendment rights.

"'For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.'" *Southwest Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quoting *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007)). Irreparable harm may be found where evidence suggests that it will be "impossible to precisely calculate the amount of damages plaintiff will suffer," including where the business may lose an unascertainable number of customers. *Id*. *See also Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990). A company may also suffer irreparable harm where it will be disadvantaged in the competitive marketplace. *See, e.g., Dominion Video Satellite,*

*Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004) (listing factors indicating irreparable harm where there has been an alleged breach of a covenant not to complete or an exclusivity provision). As Mr. Bean has alleged difficulty in calculating damages as well as a potential loss in his competitive foothold in Cherokee County, the Court concludes that Mr. Bean has sufficiently alleged irreparable injury to state a claim for injunctive relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

The defendants argue that Mr. Bean cannot demonstrate irreparable injury or a lack of adequate legal remedies because a remedy will exist in the event Mr. Bean successfully establishes that officials at the Sheriff's Department retaliated against him for exercising his First Amendment rights. To the contrary, as defendants have pointed out, Mr. Bean has no damages remedy for the claim he asserts in the count for which he seeks an injunction, a violation of the Sherman Act. Thus, permanent injunctive relief might turn out to be an appropriate remedy. *See Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1353-54 (10th Cir. 1989) (explaining when the remedy at law will be deemed inadequate and injunctive relief therefore potentially appropriate). The fact that Mr. Bean might receive compensation for the defendants' additional violation of his First Amendment rights has no bearing upon whether he has an adequate remedy at law for the defendants' alleged violation of the anti-trust laws.

E. Violation of the Due Process Clause and Equal Protection Clause

In count six of the second amended complaint, plaintiffs contend that their unlawful detention deprived Mr. Bean of his liberty interest and of his property interest in receiving tow referrals to which he was entitled, in violation of the Due Process Clause of the Fourteenth Amendment. In addition, they assert that they were selectively chosen for arrest while others similarly situated were permitted to continue engaging in protest activities outside the strip club, in violation of the Equal Protection Clause. In response, defendants argue that the claims plaintiffs assert are properly governed by the Fourth Amendment, as a more specific textual source of constitutional protection, rather than the Fourteenth. Defendants also argue that the Court should dismiss the due process claim because (1) the plaintiffs failed to demonstrate that they have a recognized property interest in receiving tow referral calls, as explained in greater detail in the section concerning count one of the complaint and (2) the plaintiffs did not explicitly state that their arrest and detention resulted in any lost towing jobs, but rather merely that Mr. Bean lost the right to receive tow referral calls during the period of his arrest.

As plaintiffs concede, the Fourth Amendment generally governs claims asserting wrongful arrest and detention. Thus, in count five of the second amended complaint, plaintiffs assert a claim under Section 1983 that defendants violated the Fourth Amendment by unlawfully arresting them without probable cause. However, selective enforcement of the law may provide the basis for a wholly separate claim under the Equal Protection Clause. *See Marshall v. Columbia Lea Regional Hosp.,* 345 F.3d 1157, 1166-69 (10th Cir. 2003) (concluding that the lower court improperly granted summary judgment where the plaintiff alleged that a traffic stop and resulting arrest violated his

14

equal protection rights because they were based upon racial animus). *See also Eckert v. Town of Silverthorne*, 25 Fed. App'x 679, 684 (10th Cir. July 9, 2001) (unpublished opinion) (explaining the plaintiff's burden in establishing an equal protection claim based upon selective enforcement of the law).[14] As the Supreme Court has explained, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Moreover, a claim of such impermissible discrimination may be properly asserted regardless of whether the officer's actions might be considered permissible under the Fourth Amendment. *Marshall*, 345 F.3d at 1166. *See also Farm Labor Organizing Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533 (6th Cir. 2002) (explaining that "an officer's discriminatory motivations for pursuing a course of action can give rise to an Equal Protection claim, even where there are sufficient objective indicia of suspicion to justify the officer's actions under the Fourth Amendment"). Lastly, while these cases have admittedly not addressed the type of class-of-one theory espoused by plaintiff, case law suggests that a plaintiff might validly assert a "selective enforcement" equal protection claim based upon a discriminatory arrest using a class-of-one theory.[15] *See Hanes v. Zurick*, 578 F.3d 491,

---

[14] According to prior 10th Cir. R. 32.1, unpublished opinions issued before January 1, 2007 could be cited for their persuasive value, though they lacked precedential value. The Court finds the issue presented in *Eckert v. Town of Silverthorne* sufficiently analogous to that presented here to be persuasive on the issue of what a plaintiff must establish to set forth an equal protection claim based upon selective enforcement of the law.

[15] The Court notes that under a class-of-one theory, the plaintiff clearly must demonstrate that he "has been intentionally treated differently from others similarly situated and that

496 (7th Cir. 2009) (concluding that the plaintiff stated a claim for a selective enforcement equal protection violation based on a class-of-one theory where evidence suggested that the officers consistently arrested the plaintiff "solely for reasons of personal animus"). *See also Jennings v. City of Stillwater*, 383 F.3d 1199, 1210, 1215 (10th Cir. 2004) (analyzing a selective-enforcement claim based upon an alleged inadequate investigation of a crime under the class-of-one theory and concluding that plaintiff had not sufficiently set forth such a claim). Thus, the Court concludes that it would be inappropriate to dismiss count six on the grounds that the plaintiffs pursued their claim for discriminatory enforcement as a separate equal protection claim.

However, the Court concludes that plaintiffs may not pursue separate claims under the Fourteenth Amendment for deprivation of their liberty and property interests. Plaintiffs specifically argue that their unlawful arrests deprived them of their liberty interest in being free from unjustified intrusions upon their freedom of movement and association. They also argue that the arrests resulted in a deprivation of Mr. Bean's property interest in receiving tow referrals during the time that he was imprisoned. However, such claims are governed by the Fourth Amendment, rather than the

---

there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). *See also Grubbs v. Bailes*, 445 F.3d 1275, 1282 (10th Cir. 2006). Plaintiffs did allege that the other protestors at the strip club were "similarly situated." However, under the standards set forth by the Tenth Circuit, class-of-one plaintiffs may also need to make additional showings. *See, e.g., Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir. 2004) (explaining that the Tenth Circuit appears to have adopted a requirement that the plaintiff present evidence of malice).

Fourteenth.[16] *See Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007) and *Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996). *See also Turner v. Houseman*, 268 Fed. App'x 785, 788-89 (10th Cir. March 10, 2008) (unpublished opinion) (explaining that the Fourth Amendment provides the appropriate theory of liability where the plaintiff contends that an unlawful arrest deprived him of his liberty without due process of law).

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' Motion for Judgment on the Pleadings (doc. # 67) is denied, as set forth above. Plaintiff is granted leave to file an amended complaint no later than February 12, 2010.

**IT IS SO ORDERED.**

---

[16] The Court acknowledges that there are instances in which an individual may assert a separate due process claim for harms stemming from an unlawful arrest and prosecution. For example, the Tenth Circuit has recognized that the Fourteenth Amendment provides a separate theory of liability where the plaintiff brings a malicious prosecution claim and alleges "harms to liberty outside the scope of the Fourth Amendment's concern with freedom from restraint, such as harm to reputation resulting in some tangible injury…" *See Becker v. Kroll*, 494 F.3d 904, 920 (10th Cir. 2007) (citations omitted). *See also Turner v. Houseman*, 268 Fed. App'x 785, 788-89 (10th Cir. March 10, 2008) (unpublished opinion) (noting that the plaintiff might have a separate procedural due process claim for injury to professional reputation). However, the Court does not construe count six as alleging such harm. Rather, the claim that Mr. Bean was deprived of the opportunity to receive tow referrals during the time he was imprisoned appears to the Court to be a claim for damages for the initial seizure of Mr. Bean's person. As such, it is properly brought pursuant to the Fourth Amendment.

Dated this 29th day of January, 2010, in Kansas City, Kansas.

                                          s/ John W. Lungstrum
                                          John W. Lungstrum
                                          United States District Judge